

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John H. Winters
Executive Director
State Department of Public Welfare
Austin 3, Texas

Dear Mr. Winters:

Opinion No. O-6508
Re: Whether a municipality is
authorized to issue a license
for any person to conduct a
day nursery or children's
boarding home, etc., as
described in Article 4442a
and Articles 695a and 695c.

Your request for our opinion on the hereinabove captioned matter has been received by this department. We quote from your letter as follows:

"We wish to seek your opinion with reference to the law administered by the Division of Child Welfare which deals with the licensing of day nurseries, children's boarding homes, child placing agencies and other places for the care and custody of children. For this statute and others applicable to the licensing program, we refer you to Article 4442a, Article 695a; Section 8 and Article 695c, Revised Civil Statutes of Texas, 1925, and amendments.

"The particular question with reference to this licensing law is whether or not a municipality may license day nurseries, children's boarding homes, child placing agencies or other places for the care and custody of children as specified in the above cited articles and if so whether that municipality may charge a fee for such licenses. We have an instance in Texas where the city is charging $5 fee for a license to board children. You can see the hardship this might work on some boarding parents or this $5 may have to come from Community Chest money of the

agency which may be using the boarding home. We were not sure whether this was a valid charge since the superior statute of the state, namely, Article 4442a, directs that this department issue such licenses without fee.

"In your opinion, please indicate whether a fee may be charged by the municipality under its ordinance for any of the classifications covered which includes not only boarding homes for children, institutions, child placing agencies but other places for their care and custody."

Section 1 of Article 4442a, Vernon's Annotated Civil Statutes, provides:

"Every person, association or corporation, whether operating for charity or revenue, who shall own, conduct or manage a day nursery, children's boarding home, or child placing agency, or other place for the care or custody of children under fifteen years of age, or who shall solicit funds in this State for any such place or institution, shall obtain an annual license from the State Board of Health which license shall be issued without fee, and under such reasonable and uniform rules and regulations as said Board shall prescribe. Provided that if said funds are solicited by said associations or corporations through any agent or agents thereof, only one such license shall be required by each said association or corporation for each county of the State of Texas in which county said funds are solicited.

Section 5 of Article 659a specifically transfers the duties and responsibilities placed in the State Board of Health in Article 4442a to the Division of Child Welfare of the State Board of Control, and Section 5, supra, reads as follows:

Hon. John H. Winters, page 3

"Sec. 8.  The licensing, visiting and in-
spection of all agencies required under Chapter
204, page 444, of the General and Special Laws
of the Regular Session of the 41st Legislature,
1929, now required by the State Board of Health,
shall be and is hereby transferred to and made
a part of the duties of the Division of Child
Welfare of the State Board of Control."

In 1939, the Legislature passed what is known as
the "Public Welfare Act of 1939."  (Acts of 1939, p. 544).
Section 9a of this Act transferred "all of the rights, powers
and duties heretofore conferred by law on the Division of
Child Welfare of the Board of Control, when not otherwise in
conflict with any provisions of this Act, are hereby con-
tinued in full force and effect, and are hereby transferred
to, and conferred upon the State Department of Public Welfare
as created by this Act, and shall be held, exercised and per-
formed by the State Department of Public Welfare under the
provisions of this Act and the several Acts now in force and
any amendment or amendments thereto which might be made."

The "Public Welfare Act of 1939" was amended and
is now Article 695c.  Section 5 of said Article provides:

"There shall be created in the State Department
of Public Welfare the following Divisions: a Division
of Child Welfare, a Division of Audits and Accounts,
a Division of Research and Statistics and such other
Divisions as the Executive Director may find necessary
for effective administration.  The Executive Director
shall have the power to allocate and reallocate
functions among the Divisions within the Department
and have the power and authority, subject to classifi-
cation, to select, appoint, and discharge such assist-
ants, clerks, stenographers, auditors, bookkeepers,
and clerical assistants as may be necessary in the
administration of the duties imposed upon the State
Department of Public Welfare within the limits of the
appropriations that may be made for the work of said
Department."

Hon. John H. Winters, page 4

A careful reading of the above statutes reveals that the Division of Child Welfare of the State Department of Public Welfare now has the power to license day nurseries, children's boarding homes, child placing agencies and other places for the care and custody of children. The question that we must now decide is whether the Division of Child Welfare of the State Department of Public Welfare has the exclusive authority to license said homes for children.

It has been stated in Texas Jurisprudence, Vol. 30, pages 119, 120 and 121:

"The police power is a grant of authority from the people to their governmental agents for the protection of the health, safety, comfort and welfare of the public. Broadly stated, the police power of a city is the power to govern, exercised either by restriction or compulsion in promoting the general good of the people. The exercise of this power by the municipality is but a mode of exerting the power of the government of the State within the limits of the municipality."

"The exercise of police power is not an inherent right of municipal corporations; such phases of it as may be exercised must come from legislative grant. The Legislature may grant general police powers and the means of enforcing respect and observance. The grant of this power to home-rule cities is found in the provision of the enabling act authorizing them to enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants.

"Generally speaking, municipal corporations have the right, under the police power, to safeguard the health, comfort, and general welfare of their citizens by such reasonable regulations as are necessary for that purpose.

"The police power is not an arbitrary one; it has its limitations. Thus it is subject to the limitations imposed by the Constitution upon every

Hon., John H. Winters, page 5

power of government, and will not be permitted
to invade or impair the fundamental liberties
of the citizen. Also it is founded in public
necessity and only public necessity can justify
its exercise. It is commensurate with, but does
not exceed, the duty to provide for the real
needs of the people in their health, safety,
comfort and convenience as consistently as may
be with private property rights. The interests
of the public generally, as distinguished from
those of a particular class, must require the
interference. . . ."

With reference to the ordinances enacted by cities
under their police powers, it is stated in Corpus Juris, Vol.
37, page 187, § 36, which reads in part as follows:

"In the absence of positive evidence to the
contrary, however, such acts or ordinances are
presumed to be reasonable, and the courts will
not interfere unless their unreasonableness and
oppressiveness is clearly apparent, the burden of
proving their unreasonableness of invalidity being
on the one who asserts it, usually the licensee."

Or as said by McQuillin on Municipal Corporations,
(2d Ed.) Vol. 3, page 693:

"Ordinances imposing license taxes under
the power to regulate are prima facie valid, and
the unreasonableness of the exactions must be
made clearly to appear, and they must be obbriously
and largely beyond what is needed for the purpose
intended, before such legislation will be declared
void. The fact that the exaction may result in
producing a revenue in excess of that required for
regulation, does not in itself destroy the regula-
tory character of a police measure . . . ."

It is stated in the case of Ex Parte Brewer, 152
S. W. 1063:

"The question of the right of a city to adopt
reasonable regulations in regard to all matters
subject to the police power has been so frequently

before this court and so exhaustively discussed we do not deem it necessary to do so here, but merely cite some of the decisions, wherein it is expressly held that a right of the city authorities to adopt such regulations, so long as they are reasonable are upheld, and wherein it is held that, if such ordinances do not amount to virtual prohibition, they are not in conflict with the laws of the State licensing such occupation. . . ."

In view of the foregoing authorities, it is the opinion of this department that a municipality may license day nurseries, children's boarding homes, child placing agencies or other places for the care and custody of children, and you are further advised that the city may charge a reasonable fee for said license.

We are herewith returning to you the copies of the rules and regulations covering the child welfare program.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By   *J. C. Davis, Jr.*
    J. C. Davis, Jr.
    Assistant.

APPROVED MAY 31, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

JCD:rt
Eno.1